# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

VIVIANE BUSHONG,

    Plaintiff,

    v.

DELAWARE CITY SCHOOL
DISTRICT, *et al.*,

    Defendants.

Case No. 2:19-cv-858
Judge Edmund A. Sargus, Jr.
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

Defendants Delaware City School District, Paul Craft, and Richard Stranges (collectively "Defendants") have filed a Motion for Judgment on the Pleadings (ECF No. 9). Plaintiff Viviane Bushong ("Plaintiff") has filed a Response in Opposition (ECF No. 15). Defendants have filed a Reply in Support of Defendants' Motion for Judgment on the Pleadings (ECF No. 18). For the following reasons, Defendants' Motion for Judgment on the Pleadings (ECF No. 9) is **GRANTED.**

### I.

Delaware City School District (the "School District") has employed Plaintiff for approximately the past thirty years. (Compl. ¶ 9, ECF No. 1.) Plaintiff started working for the School District in 1991 as a career guidance counselor at Delaware Hayes High School ("Hayes"). (*Id.* at 10.) In late 2004,[1] Plaintiff complained to Principal Stranges of certain issues within Hayes. (*Id.* at 11–13.) On December 13, 2004, Plaintiff was involuntarily transferred to Willis Intermediate School ("Willis") as a guidance counselor. (*Id.* at 14.) The issues related to this transfer were litigated in *Bushong v. Delaware City School District, et al.*, Case No. 2:06-cv-1015

---

[1] Neither the Complaint nor the Answer provides the exact date this complaint occurred.

("the 1015 Case"). (*Id.* at 15.) On July 26, 2010, the parties stipulated to the dismissal of all claims in the 1015 Case. (*See* the 1015 Case, ECF No. 91.)

The following is taken from Plaintiff's Complaint, as the Court must, at this stage of the case, assume Plaintiff may prove these allegations. For the 2017–2018 school year, Plaintiff was involuntarily transferred to Woodward Elementary School ("Woodward") as an English as a Second Language ("ESL") teacher. (Compl. ¶ 16.) Plaintiff also worked one day a week as a career counselor for high school students. (*Id.*) For the 2018–2019 school year, Plaintiff was involuntarily transferred back to Hayes as an ESL teacher, director of two study halls, teacher on lunch duty, and work study coordinator. (*Id.* at 17.)

When the 2018–2019 school year began, Plaintiff had an incident with an ESL student.[2] (*Id.* at 31.) Plaintiff was placed on administrative leave while an investigation took place. (*Id.* at 32.) After the investigation, Defendants gave Plaintiff a reprimand and required her to attend a meeting with one of the involved student's fathers. (*Id.* at 33.) Plaintiff requested an administrative presence for the meeting, but none was provided. (*Id.* at 34.) The student's father was aggressive and hostile during the meeting. (*Id.* at 35.)

On September 10, 2018, after the incident and investigation, Defendants re-assigned Plaintiff to five periods of study hall, one hour of work credit counseling, and lunch duty.[3] (*Id.* at 18.) Upon reassignment, Plaintiff expressed concerns to Defendant Richard Stranges, the principal of Hayes at all times relevant to this lawsuit ("Principal Stranges"), about classroom discipline and control. (*Id.* at 22.) Principal Stranges told Plaintiff she would receive support and her students

---

[2] Plaintiff's Complaint alleges only that this was an "incident." (Compl. ¶ 31.) In Defendants' Answer they assert that they received complaints from three students alleging Plaintiff discriminated against them and harassed them because of their national origin. (Answer ¶ 12, ECF No. 5.)

[3] Defendants assert this reassignment was due to an observation of Plaintiff's classroom teaching. (Answer ¶ 13.)

would be divided into small groups of four. (*Id.* at 23–24.) Principal Stranges did not give Plaintiff support or divide her students into small groups. (*Id.* at 24.)

For the 2019–2020 school year, Defendants' assigned Plaintiff to an ESL class. (*Id.* at 26.) Plaintiff attempted to rearrange her class roster based on skill level. (*Id.*) She also requested curriculum materials. (*Id.* at 28.) Defendants told Plaintiff that she could not make changes to the roster and they would not order her curriculum materials. (*Id.* at 27, 29.) As a result, Plaintiff spent $150 of her own money on materials. (*Id.* at 30.)

On March 8, 2019, Plaintiff sued the School District, Paul Craft the Superintendent of Schools for the School District ("Superintendent Craft"), and Principal Stranges. (*Id.* at 5, 7.)

Plaintiff's Complaint alleges seven causes of action: (1) deprivation of Plaintiff's First, Fifth and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983; (2) conspiracy to interfere with Plaintiff's civil rights in violation of 42 U.S.C. §§ 1985 and 1986; (3) age discrimination in violation of the Age Discrimination Employment Act ("ADEA"); (4) age discrimination in violation of Ohio Revised Code § 4112.14; (5) age discrimination in violation of Ohio public policy; (6) conspiracy to harass and retaliate against Plaintiff in violation of Ohio law; and (7) retaliation against Plaintiff in violation of Ohio law and the ADEA. (Compl. ¶¶ 37–66.)

Defendants filed a motion for judgment on the pleadings on all counts. Defendants' motion is ripe for review.

## II.

The Federal Rules of Civil Procedure provide that, "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard of review for a Rule 12(c) motion for judgment on the pleadings is identical to the standard for a motion to dismiss under Rule 12(b)(6). *Sensations, Inc. v. City of Grand*

*Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). To state a claim upon which relief may be granted, Plaintiffs must satisfy the pleading requirements set forth in Rule 8(a). While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (clarifying the plausibility standard articulated in *Twombly*). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it][is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 677–79 (quoting *Twombly,* 550 U.S. at 55) (internal quotations omitted). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

In *Twombly*, the Supreme Court concluded that, to meet the Rule 8 standard, a complaint must "nudge [] [a plaintiff's] claims across the line from conceivable to plausible." 550 U.S. at 570. The Court held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [entitlement] to relief [pursuant to Rule 8(a)(2)] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations and quotations omitted). "[N]aked assertion[s] . . . without some further factual enhancement [] stop[] short of the line between possibility and plausibility of entitle[ment] to relief." *Id.* at 557 (internal quotations omitted).

In *Iqbal*, the Court explained that one of the "principles" underlying *Twombly* is that the ordinary rule that courts must accept as true allegations made in pleadings for purposes of deciding a Rule 12(b)(6) motion does not apply to legal conclusions. *Id.* at 678. In other words, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679–79.

A motion for judgment on the pleadings may be granted only if the moving party is clearly entitled to judgment. *Source Assocs. v. Valero Energy Corp.*, 273 F. App'x. 425, 427 (6th Cir. 2008).

## III.

Defendants move for judgment on the pleadings on all counts and provide multiple arguments for judgment of each count. The Court addresses the arguments below.

### A. Claims Against the School District

Plaintiff named the School District in all seven counts. (*See* Compl. ¶¶ 37–66.) Defendants argue the School District is not capable of being sued. (Def.'s Mot. J. Pleadings at 3–4, ECF No. 9.) This Court has held "that under Ohio law, a school district does not exist and is not sui juris." *Estate of Olsen v. Fairfield City Sch. Dist. Bd. of Educ.*, 341 F. Supp.3d 793, 799 (S.D. Ohio Sept. 21, 2018) (internal citations omitted). "Instead, it is the board of education of the school district that is the body politic and corporate which is capable of suing and being sued." *Id.* (citing O.R.C. § 3313.17 ("The board of education of each school district shall be a body politic and corporate, and, as such, capable of suing and being sued.")); *see also Thompson v. Bd. of Educ.*, No. 3:12-cv-287, 2013 WL 6001626, at *3 (S.D. Ohio Nov. 12, 2013).

This Court has also held, however, that in early stages of a case, if a plaintiff names an entity not capable of being sued, "dismissal is not the proper remedy." *Mahdy v. Mason Sch. Dist.*, No. 1:16-cv-845, 2017 WL 25504, at *3 (S.D. Ohio Jan. 3, 2017). Instead, an amendment under Rules 15 and 16 to name the proper party, is preferable. *Id.* Rule 15 provides a "liberal standard of permitting amendments to ensure the determination of claims on their merits." *Id.* (citing *Marks v. Shell Oil Co.*, 830 F.3d 68, 69 (6th Cir. 1987)). Rule 15 provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. Pro. 15(a)(2). Additionally, when a case has a scheduling order Rule 16 provides that, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. Pro 16(b)(4). In determining whether good cause exists, the primary consideration is the moving party's diligence in attempting to meet the scheduling order's requirements. *Commerce Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 377 (6th Cir. 2009).

Defendants argue that because the School District is not sui juris, it should be dismissed from the lawsuit. (Def.'s Mot. J. Pleadings at 3–4.) Plaintiff points out that she previously sued the School District in the 1015 Case and it never objected. (Pl.'s Resp. at 2.) Plaintiff asks for leave to amend the Complaint to sue the Delaware City School Board (the "School Board"). (*Id.* at 3.) Plaintiff argues the Court should allow the amendment because the School Board is aware of the matter, its counsel is the same as the School District's counsel, and no amendment to the schedule would be needed. (*Id.*) The substitution would be to the name only. (*Id.*)

The Court agrees with Defendants that the School District is not a proper party because it is not an entity capable of being sued. *Mahdy*, 2017 WL 25504 at *3; *Estate of Olsen*, 341 F. Supp. 3d at 799. The Court also agrees with Plaintiff that dismissal is not the proper remedy. In this case, however, allowing Plaintiff leave to amend her Complaint is unnecessary. As explained

below, Defendants are entitled to judgment on all seven counts, even if the Complaint is amended to name the proper party.[4]

## B. Count I

Count I alleges that in reassigning Plaintiff from an ESL teacher to a study hall monitor, Defendants interfered with Plaintiff's First, Fifth, and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983. (Compl. ¶¶ 37–43.) Defendants argue Plaintiff has not alleged a violation of her constitutional rights. (Def.'s Mot. J. Pleadings at 5.)

Section 1983 provides in relevant part the following:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. A *prima facie* case under Section 1983 requires (1) conduct by an individual acting under color of state law, and (2) this conduct must deprive the plaintiff of rights secured by the Constitution or laws of the United States. *Day v. Wayne Cty. Bd. of Auditors*, 749 F.2d 1199, 1202 (6th Cir. 1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). Section 1983 merely provides a vehicle for enforcing individual rights found elsewhere and does not of itself establish any substantive rights. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). Plaintiff argues Defendants violated her First, Fifth, and Fourteenth Amendment rights.

### 1. First and Fourteenth Amendment Claim

For a public employee to establish a prima facie case of retaliation in violation of the First Amendment, the employee must demonstrate: (1) she was involved in constitutionally protected activity; (2) the employer's conduct would discourage individuals of ordinary firmness from

---

[4] The Court will analyze Defendants' remaining arguments assuming the proper party was sued.

continuing to act; and (3) the employee's exercise of constitutionally protected rights was a motivating factor behind the employer's conduct. *Evans-Marshall v. Bd. of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 337 (6th Cir. 2010); *Boulton v. Swanson*, 795 F.3d 526, 530 (6th Cir. 2015). To determine whether a public employee's speech is constitutionally protected, courts must determine whether the employee engaged in the speech as a citizen and whether the speech was on a matter of public concern. *Aquilina v. Wriggelsworth*, 759 F. App'x 349, 343 (6th Cir. 2018).

When a public employee makes a statement pursuant to her official duties, the employee is not speaking as a citizen for purposes of the First Amendment.[5] *Id.* (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)); *see also Boulton*, 795 F.3d at 534 (finding a public employee's speech is not protected by the First Amendment if it is "made in furtherance of the ordinary responsibilities of his employment"). In a retaliation case in the Sixth Circuit, whether a public employee's speech is protected by the First Amendment is a question of law. *Fox v. Traverse City Area Pub. Schs. Bd. of Educ.*, 605 F.3d 345, 350 (6th Cir. 2010).

In *Fox v. Traverse City Area Public Schools Board of Education*, a public schoolteacher argued the defendant fired her for her First Amendment protected speech. *Id.* at 347. The teacher had voiced concerns to her supervisor about the size of her teaching caseload. *Id.* The Sixth Circuit found this speech was made as a public employee, not a citizen, and therefore did not warrant First Amendment protection. *Id.* at 349. In making this decision, the Sixth Circuit noted

---

[5] The Supreme Court explained this limitation on public employees' ability to make out a First Amendment retaliation claim in *Garcetti v. Ceballos*, 547 U.S. 410, 417–21 (2006). The Supreme Court explained that "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom," because government employers "need a significant degree of control over their employees' words and actions . . . for the efficient provision of public services." *Id.* at 418–19. This requirement must be balanced by the recognition that "a citizen who works for the government is nonetheless a citizen." *Id.* at 419. Thus, "[s]o long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Id.*

that the plaintiff directed her complaint about her teaching caseload solely to her supervisor, not the general public. *Id.* Additionally, it was clear without intricate parsing of the plaintiff's job description, that the speech owed its existence to her responsibilities as a teacher. *Id.*

Similarly, in *Evans-Marshall v. Board of Education of Tipp City Exempted School District*, a public schoolteacher argued her choice of books and teaching methods to use in her classroom was protected speech. 624 F.3d at 337. The Sixth Circuit disagreed and found this speech was pursuant to the plaintiff's official duties. *Id.* at 340. The Sixth Circuit noted that "[o]nly the school board has ultimate responsibility for what goes on in the classroom, legitimately giving it a say over what teachers may (or may not) teach in the classroom." *Id.* at 340; *see also Savage v. Gee*, 665 F.3d 732, 738 (6th Cir. 2012) (finding a librarian's suggestion to other professors of which book students should read unprotected by the First Amendment because it was made pursuant to his ordinary duties); *but see Aquilina v. Wriggelsworth*, 759 F. App'x at 341 (holding that a state judge's speech, allowing her assistant to release a video of the judge's courtroom to a reporter, was protected by the first Amendment because it was not in the course of her duties as a judge, particularly because the ultimate audience was the public at large); *Lane v. Franks*, 573 U.S. 228 (2014) (finding a public employee's testimony as to the termination of a previous employee, both in front of a grand jury and at trial, entitled to first amendment protection); *Boulton*, 795 F.3d at 535 (finding a public employee's testimony during a contract arbitration as to the adequacy of the company's training, protected by the First Amendment).

Here, Plaintiff argues she was demoted in retaliation for the exercise of her First Amendment rights. The Complaint does not specifically allege which expressions she believes were First Amendment protected speech. Defendants indicate, and the Court agrees, the following expressions were in the Complaint, and thus, could possibly form the basis of Plaintiff's claim:

1. Expressing concern to Principal Stranges about classroom discipline and control;
2. Rearranging students on a class roster and communicating the purpose as fostering a better educational environment;
3. Requesting ESL curriculum and materials;
4. Spending $150 of Plaintiff's own money on books and other materials;
5. Involvement in an incident with an ESL student that resulted in an investigation; and/or
6. Requesting an administrative presence at a meeting with a student's parent.

(Compl. ¶¶ 22–23, 26–28, 30–34.) Defendants argue that each of these expressions were made in the course of Plaintiff's public employment, and thus, are not protected by the First Amendment. In support, Defendants rely on *Fox* and *Evans-Marshall* as factually similar cases where the Sixth Circuit found teachers' expressions not protected by the First Amendment.

Plaintiff relies upon a case in which the district court allowed discovery to develop the factual record as to the plaintiff's speech. (*See* Pl.'s Resp. at 3–4 (citing *Davies v. Trigg Cty*, No. 5:16-cv-00068, 2016 U.S. Dist. LEXIS 167181 (W.D. Ky. Dec. 5, 2016).) Plaintiff asserts that "it is simply too early in the proceedings to adjudicate [Plaintiff's] speech." (*Id.* at 3.) Plaintiff's argument is not persuasive for it confuses the Rule 12(c) standard.

A complaint must contain sufficient factual allegations, such that, when the factual allegations are accepted as true, there is a plausible statement of relief. *Iqbal*, 556 U.S. at 677–78. As such, in *Davies v. Trigg Cty*, the case Plaintiff relies on, the court stated "all [p]laintiffs have plausibly alleged that their speech was constitutionally protected," and thus, the case was not dismissed. 2016 U.S. Dist. LEXIS 167181 at *21. Here, the Court must look to the pleadings to determine whether there is plausible Section 1983 claim and cannot, as Plaintiff suggests, find Plaintiff's speech protected simply because "the case is in its infancy." (Pl.'s Resp. at 3.)

In Plaintiff's Complaint, each of the alleged expressions are within the course of Plaintiff's employment, and thus, not protected by the First Amendment. Plaintiff's complaint to Principal Stranges about classroom discipline and control is comparable to the plaintiff in *Fox*'s complaint

about her classroom workload. This complaint is within the course of Plaintiff's employment as a school teacher. Further, it was made only to Principal Stranges and not the public. Similarly, Plaintiff's attempt to rearrange her roster, her request for a curriculum and books, and her subsequent purchase of those materials, is comparable to the plaintiff's choice of curriculum and books in *Evans-Marshall*. The expressions are within the scope of Plaintiff's ordinary duties as a schoolteacher.

Similarly, the incident with an ESL student resulting in an investigation, and the accompanying question about having an administrative presence at a meeting, are not protected. Interacting with students, and meeting with parents, are aspects of a teacher's ordinary responsibilities. These expressions are not just concerning information acquired by virtue of public employment, but they are ordinarily within the scope of the employee's duties. *Lane*, 573 U.S. at 240. A school teacher ordinarily must interact with and speak to students, as well as their parents. In fact, a teacher is expected to perform these acts. *Aquilina*, 759 U.S. at 343. This speech is, thus, unprotected by the First Amendment.

Plaintiff has not alleged facts showing she acted as a private citizen whose speech is First Amended protected. Instead, each expression was in furtherance of her ordinary duties as a public employee, and thus, not protected by the First Amendment. The Court need not go on to the other elements of a retaliation claim.

### 2. Fifth and Fourteenth Amendment Claims

Count I also alleges Defendants violated Section 1983 by interfering with Plaintiff's right to due process as guaranteed by the Fifth and Fourteenth Amendments. (Compl. ¶¶ 42–43.) Defendants argue this claim should be dismissed because Plaintiff has not alleged an independent constitutional violation. (Def.'s Mot. J. Pleadings at 8–9.)

"Substantive due process . . . protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action." *Gutzwiller v. Fenik*, 860 F.2d 1317, 1328 (6th Cir. 1998). The fundamental rights protected "arise from the Constitution itself and have been defined as those rights which are 'implicit in the concept of ordered liberty.'" *Id.* (citing *Palki v. Connecticut*, 302 U.S. 319, 325 (1937)). "[A]n interest in liberty or property must be impaired before the protections of substantive due process become available." *Id.* The Sixth Circuit "recognizes a narrow substantive due process right to protection against losing one's job because of an independent constitutional violation." *Hopkins v. Canton City Bd. Of Educ.*, 477 F. App'x 349, 365–66 (6th Cir. 2012). Importantly, however, "[a]n employment reassignment does not deprive one of a constitutionally protected property right, unless a specific contract or statute ensures that right." *Brandal v. Columbus City Sch. Dist.*, No. 2:09-cv-680, 2010 U.S. Dist. LEXIS 133264, at *12 (S.D. Ohio Dec. 1, 2010) (citing *Angelmeyer v. Hamilton Cty Hosp.*, 58 F.3d 533, 539 (10th Cir. 1995) (holding there is "no protected property interest implicated when an employer reassigns or transfers an employee absent a specific statutory or contract provision")).

Defendants argue Plaintiff fails to allege an independent constitutional violation. Plaintiff fails to respond to this argument, and as such, waives it. *Conrad v. Bank Nat'l Ass'n*, 391 F. Supp. 3d 780, 791–92 (S.D. Ohio June 19, 2019) ("[The plaintiff] does not refute [the defendant's] characterization of [the claim], nor does [the plaintiff] respond in any way to [the defendant's] argument that this claim should be dismissed. Thus, [the plaintiff] appears to concede this point and waives opposition to dismissal of this claim); *see also Woods v. U.S. Bank Nat'l Ass'n*, No. 517CV2234, 2019 U.S. Dist. LEXIS 44901, at *6–7 (N.D. Ohio Mar. 19, 2019) ("A party waives opposition to an argument by failing to address it in her responsive brief . . . the [c]ourt is not

required to consider the[] merits and may grant judgment in [the moving party's] favor."); *Ohio Star Transp., LLC v. Roadway Express, Inc.*, No. 2:09-cv-261, 2010 U.S. Dist. LEXIS 95764, at *10 (S.D. Ohio Sept. 14, 2010) ("[The defendant] raises this argument, but [the plaintiff] does not respond, thereby waiving its ability to challenge the argument and effectively conceding the point.").

Even if the Court were to consider this argument on the merits, despite Plaintiff's waiver, the Court agrees with Defendants. Plaintiff has not alleged the deprivation of any constitutionally protected right, which is required for a claim of deprivation of due process. Plaintiff has alleged she was reassigned to a different position but has not alleged any violation or breach of a contract or statute. Thus, Plaintiff has not alleged a due process violation. *Brandal*, 2010 U.S. Dist. LEXIS 133264 at *12. The Defendants' motion is GRANTED as to Count I.

## C. Count II

Count II alleges that Defendants conspired to violate Plaintiff's rights in violation of 42 U.S.C. §§ 1985 and 1986. (Compl. ¶¶ 44–45.) Defendants argue that because they are all part of the same collective entity, they cannot form a conspiracy. (Def.'s Mot. J. Pleadings at 10.)

To sustain a cause of action for civil conspiracy, "a plaintiff must prove the existence of a conspiracy among 'two or more persons.'" *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd.*, 926 F.2d 505, 509 (6th Cir 1991). As such, the intra-corporate conspiracy theory provides:

> It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.

*Id.* The Sixth Circuit applies the intra-corporate conspiracy theory when a plaintiff alleges a conspiracy among agents of a school board. *See id.* at 510. For example, in *Hull v. Cuyahoga Valley Joint Vocational School District Board*, the plaintiff alleged a conspiracy among the school

district's superintendent, the school district's executive director, and a school administrator. *Id.* The Sixth Circuit found that "[s]ince all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Id.*

Similarly, in *Barr v. Jefferson County Board of Education*, the plaintiff alleged a conspiracy among the board of education, the superintendent, two board officials, and two principals. 311 F. App'x 817, 820 (6th Cir. 2009). The Sixth Circuit found the defendants were part of the same collective entity and thus, there were no two separate people to form a conspiracy. *Id.* at 826–27.

Defendants argue that the School District, Principal Stranges, and Superintendent Craft are all part of the same collective entity, and thus, there are no two separate people to form a conspiracy. The Court agrees. The Sixth Circuit has held both principals and superintendents are part of the same entity as the board. *See Barr*, 311 F. App'x at 820; *Hull*, 926 F.2d at 510. Plaintiff argues *Barr* is distinguishable because "the conduct of Defendants is egregious and satisfies the elements of a conspiracy." (Pl.'s Resp. at 6.) As just stated, however, the elements of a conspiracy are not satisfied. Further, the alleged egregiousness of Defendants' conduct, alone, does not satisfy the two or more persons requirement for a conspiracy.

Accordingly, Plaintiff has failed to state a claim of civil conspiracy. The Defendants' motion is GRANTED as to Count II.

### D. Count III

Count III alleges that Defendants discriminated against Plaintiff based on her age in violation of the ADEA. (Compl. ¶¶ 46–52.) Defendants argue for judgement on this Count because Plaintiff failed to exhaust her administrative remedies with the Equal Employment Opportunity Commission ("EEOC"). (Def.'s Mot. J. Pleadings at 10–12.)

Pursuant to the provisions of the ADEA, an individual must first file a charge of discrimination with the EEOC to maintain a claim under the ADEA. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 489–90 (6th Cir. 2010).; *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998) (citing 29 U.S.C. § 623(d)); *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001). The purpose of filing a charge with the EEOC is to trigger its investigatory and conciliatory procedures and allow it to attempt to obtain voluntary compliance with the law. *Id.* Failure to exhaust administrative remedies is an appropriate basis for judgement in favor of a defendant. *See id.* at 465.

Defendants argue Plaintiff failed to allege she exhausted her administrative remedies as required by the ADEA. (Def.'s Mot. J. Pleadings at 11.) Plaintiff failed to respond to this argument in her response. Thus, Plaintiff concedes this point and waives opposition to dismissal of this claim. *Conrad*, 391 F. Supp. 3d at 791–92; *see also Woods*, 2019 U.S. Dist. LEXIS 4490 at *6–7; *Ohio Star Transp., LLC*, 2010 U.S. Dist. LEXIS 95764 at *10.

Regardless, the Court agrees with Defendants that Plaintiff's failure to exhaust administrative remedies in this case requires judgment on this Count for Defendants. *See Davis*, 157 F.3d at 463; *Amini*, 259 F.3d at 448. Defendants' motion is GRANTED as to Count III.[6]

## E. Count IV

Count IV alleges that Defendants violated Ohio Revised Code Section 4112.14 by unlawfully discriminating against Plaintiff based on her age. (Compl. ¶¶ 52–55.) Defendants

---

[6] Defendants also assert judgment in their favor is necessary on Count III because Plaintiff failed to arbitrate the matter as required by the CBA. (Def.'s Mot. J. Pleadings at 11 (citing *DelCostello v. Int'l Bhd. Teamsters*, 462 U.S. 151, 163 (1983) ("Ordinarily . . . an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the [CBA]."))). This Court is not required to address this issue, however, because judgment for Defendants on Count III is required due to Plaintiff's failure to exhaust administrative remedies.

argue they are entitled to judgment on this count because Plaintiff failed to arbitrate the claim. (Def.'s Mot. J. Pleadings at 12–13.)

Ohio Revised Code Section 4112.14 provides a cause of action to any employee age forty years or older who has been discriminated against in consideration for a job opening or to be discharged on account of the employee's age.[7] O.R.C. § 4112.14(B). The statute states that its remedies "shall not be available in the case . . . where the employee has available to the employee the opportunity to arbitrate the discharge or where a discharge has been arbitrated and has been found to be for just cause." *Id.* at § 4112.14(C).

If a court finds no arbitration took place, the court must consider "whether there was available . . . the opportunity to arbitrate the discharge under the language of O.R.C. 4112.14(C)." *Blair v. Lucent Techs. Inc.*, No. C2-06-450, 2007 U.S. Dist. LEXIS 19555, at *12–13 (S.D. Ohio Mar. 20, 2017). If the court finds arbitration was indeed available, and Plaintiffs did not avail themselves to it, then the statute bars their claim of age discrimination. *Id.* at *13. "An 'opportunity' to arbitrate means the discharged employee had access to an arbitration procedure." *Id.* This Court has previously found that when arbitration is provided for under a collective bargaining agreement ("CBA"), employees have the "opportunity to arbitrate." *York v. AK Steel Corp.*, No. C-1-04-250, 2007 U.S. Dist. LEXIS 19555, at *21 (S.D. Ohio Dec. 8, 2005).

Defendants claim Plaintiff failed to take advantage of any formal grievance procedure or arbitration provided for in the CBA. In her response Plaintiff does not dispute that she did not

---

[7] While the statute's text does not clearly state whether it also applies to employment actions less than discharge, it has been applied to lesser actions for its elements parallel the ADEA. *Ercegovich v. Goodyear Tire and Rubber Co.*, 154 F.3d 344, 357 (6th Cir. 1998) (stating that "[u]nder Ohio law, the elements and burden of proof in a state age-discrimination claim parallel the ADEA analysis" and analyzing whether an employer violated the statute based a claim alleging failure to promote on account of age); *Gatch v. Milacron, Inc.*, 111 F. App'x 785, 786 (6th Cir. 2004) (analyzing whether an employer violated the Ohio age discrimination statute based on a claim alleging the plaintiff was demoted because of his age).

engage in formal arbitration. (Pl.'s Resp. at 7.) Thus, the Court must consider whether she had the opportunity to arbitrate. *Blair*, 2007 U.S. Dist. LEXIS 19555 at *13.

Plaintiff does not dispute that she is a member of a union bound by a CBA. (Compl. ¶ 31.) In addressing Defendants' argument that Plaintiff cannot succeed on a state discrimination claim, Plaintiff states in her response, "there was no viable opportunity to arbitrate" and asks the Court for leave to amend her Complaint to address this issue. (Pl.'s Resp. at 7.)

The Court finds Plaintiff has not sufficiently plead a claim under Ohio Revised Code Section 4112.14 for she had an opportunity to arbitrate and did not. Plaintiff was party to a CBA with an arbitration procedure, which is an opportunity to arbitrate within the meaning of the statute. *York*, 2007 U.S. Dist. LEXIS 19555, at *21.

Further, the Court denies Plaintiff's request for leave to amend the Complaint. The deadline to amend the pleadings was July 31, 2019. Plaintiff has not provided any reason why justice requires this amendment or shown good cause to amend the scheduling order. *See* Fed. R. Civ. Pro. 15, 16. As such, the request for leave to amend is DENIED. Defendants' motion is GRANTED as to Count IV.

### F. Count V

Count V alleges that Defendants' reassignment of Plaintiff's position violated Ohio's public policy against age discrimination. (Compl. ¶¶ 56–62.) Defendants argue Ohio law does not recognize this claim because statutory remedies are available. (Def.'s Mot. J. Pleadings at 13.)

"[A] claim for wrongful discharge in violation of public policy is not available when [the] plaintiff has statutory remedies available which would provide complete relief." *Valley v. Genoa Township*, No. 2:14-c-v-2641, 2017 WL 495504, at *10 (S.D. Ohio Feb. 7, 2017); *see also Wiles v. Medina Auto. Parts*, 773 N.E.2d 526, 531 (Ohio 2002) ("[T]here is no need to recognize a

common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests."); *Leininger v. Pioneer Nat'l Latex.*, 875 N.E.2d 36, 43–44 (Ohio 2007) ("It is clear that when a statutory scheme contains a full array of remedies, the underlying public policy will not be jeopardized if a common-law claim for wrongful-discharge is not recognized based on that policy."). The Ohio Supreme Court has held that "a common-law tort claim for wrongful discharge based on Ohio's public policy against age discrimination does not exist, because the remedies in [the Ohio Revised Code Section 4112] provide complete relief for a statutory claim for age discrimination." *Leninger*, 875 N.E.2d at 44. Additionally, Ohio state law "has not recognized a violation of public policy for lessor forms of adverse employment actions." *Hopkins v. Canton City Bd. Of Educ.*, No. 5:08 CV 2288, 2010 U.S. Dist. LEXIS 63183, at *42 (N.D. Ohio June 23, 2010).

Defendants argue Plaintiff's claim based on Ohio's public policy against age discrimination fails because Ohio does not recognize this common-law tort claim. (Def.'s Mot. J. Pleadings at 13.) Plaintiff does not address this argument in her response. Thus, Plaintiff concedes this point and waives opposition to dismissal of this claim. *Conrad*, 391 F. Supp. 3d at 791–92; *see also Woods*, 2019 U.S. Dist. LEXIS 4490, at *6–7; *Ohio Star Transp., LLC*, 2010 U.S. Dist. LEXIS 95764 at *10.

Further, the Court agrees with Defendants. Ohio state law does not recognize this cause of action. *See Leninger*, 875 N.E.2d at 44. Defendants' motion GRANTED as to Count V.

### G. Count VI

Count VI alleges that Defendants conspired to harass, retaliate against, and unlawfully reassign Plaintiff. (Compl. ¶¶ 63–64.) Defendants argue no conspiracy can exist because Defendants are all agents of the same entity. (Def.'s Mot. J. Pleadings at 14–16.) Plaintiff does

not directly address this in her response, except in addressing the same argument as to Count II. (Pl.'s Resp. at 5–6.)

The Court agrees with Defendants that the intra-corporate conspiracy theory applies and thus, there can be no conspiracy as all of Defendants are part of the same entity. *See infra* Section III.E. For the same reasons Defendants' motion is granted as to Count II, Defendants' motion is GRANTED as to Count VI.

### H. Count VII

Count VII alleges that Defendants retaliated against Plaintiff. (Compl. ¶¶ 65–66.) Plaintiff does not state in the Complaint what protected action she believes she was retaliated against for taking. To the extent it is based on the exercise of her First Amendment rights, this has already been addressed by this Court in the analysis of Count I and Defendants' motion GRANTED. *See infra* Section III.C. To the extent this claim is based on age discrimination, Defendants argue the claim fails as a matter of law, because Plaintiff did not participate in protected conduct. (Def.'s Mot. J. Pleadings 15–18.)

"The ADEA prohibits employers from retaliating against an employee for opposing or reporting age discrimination." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012) (citing 29 U.S.C. § 623(d)). Similarly, Ohio law prohibits discriminating in any manner against another person "who has opposed any unlawful discriminatory practice." *Id.* (citing O.R.C. § 4112.02). To establish a prima facie case under either Ohio law or federal law, a plaintiff must show that: (1) she engaged in protected activity; (2) the defending party was aware that the plaintiff had engaged in that activity; (3) the defendant thereafter took an adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the

adverse employment action. *Id.; see also Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 543 (6th Cir. 2008).

A plaintiff engages in protected activity under the ADEA by filing a charge, testifying, or participating in any manner, in an investigation, administrative proceeding, or litigation, or by opposing any practice made unlawful by the ADEA or Ohio state law. *Pate v. Metokote Corp.*, No. 3:11-cv-209, 2012 U.S. Dist. LEXIS, at 21–25 (S.D. Ohio Nov. 13, 2012). When a plaintiff does not allege she was retaliated against for participating in an EEOC proceeding, an investigation, or litigation, the claim must be analyzed as retaliation because of opposition. *Blizzard*, 698 F.3d at 288. In order to prevail on an opposition claim a plaintiff "must prove she took an 'overt stand against suspected illegal discriminatory action.'" *Blizzard*, 698 F.3d at 288 (citing *Coch v. Gem Indus.*, No. L-04-1357, 2005 Ohio App. LEXIS 2825, at *5 (Ohio Ct. App. June 17, 2005). A vague charge of discrimination is not enough to succeed on the opposition theory. *See id*; *see also Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591–92 (6th Cir. 2007).

Plaintiff did not allege she participated in any investigation, EEOC proceeding, or litigation resulting in Defendants' retaliation. Thus, she must set forth an opposition claim. *See Blizzard*, 698 F.3d at 288; *Pate*, 2012 U.S. Dist. LEXIS at *21. Defendants argue Plaintiff does not allege she complained about or opposed any discriminatory conduct. The Court agrees. Plaintiff alleges only a vague charge of discrimination without any allegation that she complained about or opposed a discriminatory practice. Her complaint is void of facts which could suffice to make a plausible claim that she opposed an unlawful practice.

Plaintiff's response is that she "has voiced a substantial opposition to Defendants' treatment of her since 2006[,] as evidenced by this action and the previous action." (Pl.'s Resp. at 7.) Plaintiff's response is vague, and unsupported by the pleadings. Nowhere in the Complaint

does Plaintiff allege she voiced an opposition to discrimination based on age. The Complaint asserts she complained about the classroom, the curriculum, etc., but does not assert any facts relating to opposition to illegal age discrimination. Further, Plaintiff's response relies on facts relating to the previous action between the parties, not this action. Plaintiff did not allege sufficient facts, based on the current proceeding, that she took at overt action against suspected illegal activity. *Blizzard*, 698 F.3d at 288. As such, Defendants' motion is GRANTED as to Count VII.

### I.  Defendants' Remaining Arguments

Defendants have remaining arguments as to why the claims should be dismissed, including: res judicata as to paragraphs 10–15 of the Complaint; failure to support legal conclusions with factual allegations; Defendants Stranges and Craft's immunity under Ohio Revised Code Section 2744.03(A)(6); qualified immunity; and Plaintiff's inability to collect punitive damages. The Court has already granted Defendants' motion as to all seven counts. Therefore, the Court need not address Defendants' remaining arguments.

<strong>IV.</strong>

For the reasons set forth above, Defendants' Motion for Judgment on the Pleadings (ECF No. 9) is **GRANTED.** The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED.**

1-27-2020
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**